**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO.

MARGARET NADER
AS NEXT FRIEND OF
STEPHEN VOLPE,

    Plaintiff,
v.

MAGDALENE IVANOVSKI and
GOLDEN HORN CONDOMINIUM
ASSOCIATION, INC.,

    Defendants.
_____/

**COMPLAINT**

Plaintiff, Margaret Nader as next friend of Stephen Volpe, sues the Defendants, Maggie Ivanovski and Golden Horn Condominium Association, Inc., and states as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory relief, injunctive relief, damages, punitive damages and attorneys' fees and costs for Defendants' violations of federal Fair Housing Act, as amended, 42 U.S.C. §§3601-36031 ("FHA").

**JURISDICTION, VENUE AND PARTIES**

2. This Court has original jurisdiction pursuant to 28 U.S.C . §§1331 and 1343 and 42 U.S.C. § 3613 for Plaintiffs claims arising under 42 U.S.C. § 3601 et seq. and under 15 U.S.C. §1681.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants reside within the jurisdiction of this District and because the events giving

rise to the claims occurred in this District.

4. Plaintiff, Margaret Nader as next friend for Stephen Volpe ("Margaret"), is *sui juris* and a resident of Broward County, Florida.

5. Defendant, Magdalene Ivanovski, is *sui juris* and a resident of Broward County, Florida.

6. Defendant, Golden Horn Condominium Association, Inc., is a Florida non-profit corporation whose principal address is located in Broward County, Florida.

7. All conditions precedent to this action have occurred, been satisfied or are otherwise waived.

## COMMON ALLEGATIONS

8. Golden Horn is a residential condominium located in Broward County, Florida ("Condominium").

9. Golden Horn Condominium Association, Inc. is the not-for-profit corporation that operates and manages the affairs of the Condominium in accordance with its Declaration of Condominium, By Laws, Articles of Incorporation and Rules and Regulations as they are amended from time to time ("Governing Documents"). To take action, Golden Horn Condominium Association, Inc. acts through its board of directors, officers, and through actual, apparent, ostensible or other agents of the Association ("Agents"). Collectively, the Golden Horn Condominium Association and its Agents are referred to as the "Association".

10. Magdalene Ivanovski (the "President") is a director and president of the Association.

11. Chaz and Michael are the owners of Unit 9D in the Condominium ("Unit") and the older brothers of Stephen Volpe ("Stephen"), an autistic individual.

12. Margaret Nader is the mother and next friend of Stephen and resides in Unit 9D with Stephen, her sons and her husband.

13. Stephen is a twenty six year old autistic individual who has resided in Unit 9D

since October 2018. Stephen has had a record history of autism and treatment for it since he was diagnosed at age three. Stephen receives disability benefits for his autism including SSDI and Medicaid. Stephen is enrolled in special needs education programs and has been enrolled in same since he first attended school.

14. As a result of his disability, Stephen has and continues to have substantial limitations in various life activities including working, learning, reading, writing, speaking, communicating, comprehending, driving, and voting. His autism also substantially interferes with his ability to cope with stress including harassing interactions with people. Such interactions cause him to engage in repetitive behavior including rocking, pacing, speaking and other emotional and behavioral disorders resulting from anxiety and stress including panic attacks.

## COUNT I – FAILURE TO ACCOMMODATE
## Violations of 42 U.S.C. §3604(f)(1)-(3); 24 C.F.R. §100.50(b)(2)(3); 100.70(b); 100.70(d); 100.80(b); 100.7
### (All Plaintiffs against all Defendants)

15. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-13 above as though fully set forth herein.

16. Stephen is a disabled individual based on autism. Stephen's disability is and has been known, obvious and readily apparent to Defendants. And Defendants have regarded and continue to regard Stephen as disabled resident living with his family in the Unit.

17. Stephen's brothers, Chaz and Michael, are the owners of the Unit that acted on behalf of Stephen to exercise his rights for an accommodation based on Stephen's disability by making a request for Stephen to keep an assistance animal that he had acquired around September 2018 for his autism.

18. On or about May 7, 2019, the Association notified Stephen's brothers that

Stephen's assistance animal violated the Association's no pet restrictions.

19. On or about May 13, 2019, Chaz contacted the Association to notify the Association that Stephen was disabled and that he needed an accommodation to keep Stephen's dog as an assistance animal based on his disability. The written notice cited to disability laws warning the Defendants that Stephen was protected under the law based on his disability. The written notice also notified the Association that the President had been derogatorily referring to Stephen as "that Happy Boy" and that the President was harassing Stephen based on his disability.

20. After receiving the notice, the Defendants failed to notify Stephen or his brothers that the accommodations request was approved.

21. On June 14, 2019, the Association responded to the accommodations request by sending notice that it imposed a $1,000 fine against Stephen's brothers, the owners of the unit, for keeping Stephen's dog in violation of the no pet restrictions and an additional seven other violations including a $1,000 fine for having their brother, Stephen reside with them. The President approved the notice and action to reject the accommodations request.

22. The Association thereafter noticed a fining hearing before the Association's fining committee and the President approved the notice.

23. Thereafter, in or about the middle of August 2019, the Association held a Board Meeting concerning among other things the fines imposed on Stephen's brothers. Chaz attended. At the Board Meeting, the President said that the Association's attorney said that the fines for the Unit (Stephen's brothers' unit) could be imposed because the Association did not even need a fining committee to impose it even though the Board did not take such action with other families whose fines went before fining committees but were withdrawn if not approved treating Stephen's family differently.

24. To date, the Association has not provided any notice approving Stephen's assistance animal based on his autism or even responded to the accommodations request

made on his behalf. Instead, the Association ignores and continues to ignore the request causing Stephen to believe and fear that the Association will remove his dog based on their notice that Stephen's dog violated the pet restrictions and their threat to sue his brothers in arbitration to remove the dog and seek attorneys' fees and costs.

25. As a direct and proximate result of Defendants' discriminatory actions, Stephen suffered damages including emotional distress, mental anguish, embarrassment, humiliation, anger, travel expenses incurred for medical treatment, frustration, loss of use and enjoyment of the unit and Condominium and loss of dignity.

26. Defendants' discriminatory conduct was deliberately indifferent, intentional, willful and/or taken in reckless disregard of the rights of Stephen's rights under the FHA. Stephen is entitled to punitive damages to punish and deter Defendants' reckless disregard of their rights under the FHA. During the time Defendants' failed and continue to fail to accommodate Stephen, Defendants had knowledge that disability laws require them to grant the accommodation to allow Stephen to keep his dog at the Unit on the basis of disability yet still continued to violate the FHA by failing to grant his accommodations request.

27. The Association is directly and vicariously liable for such actions and the actions of its President and Board Members who acted on behalf of the Association in the scope of their duties as directors or officers and with apparent authority of the Association.

28. Stephen is entitled to declaratory relief stating that Defendants discriminatory actions violated the FHA and a statutory injunction requiring the Association to waive its pet restrictions to allow Stephen to keep an assistance animal on the basis of his autism.

29. Plaintiff is entitled to an award of attorneys' fees, costs and disbursements pursuant to 42 U.S.C. § 3613 of the FHAA.

**COUNT II**

**DISCRIMINATION IN PRIVILEGES, TERMS, CONDITIONS OF SALE**

**Violations of 42 U.S.C. §3604(f)(2); 24 C.F.R. §§100.50(b) and (b)(2), 100.65(b) and (b)(4),(6),(7); 100.70(b); 100.7**
**(Margaret against all Defendants)**

30. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-13 above as though fully set forth herein.

31. Stephen is a disabled individual based on autism. Stephen's disability is and has been known, obvious and readily apparent to Defendants. Defendants have regarded and continue to regard Stephen as disabled.

32. Defendants treat Stephen differently than non-disabled residents. Among other things, Defendants through their directors including the President have treated Stephen differently on numerous occasions by:

   a. requiring his occupancy approval and falsely representing occupancy approval was required;

   b. imposing $6,000 of fines relating to his occupancy, his assistance animal, and otherwise targeted at his family for assisting him in the exercise of his rights;

   c. confirming the fines relating to his occupancy and assistance animal and falsely representing fines could be confirmed without a fining committee;

   d. harassing and bullying Stephen, constantly:

      i. admonishing him for walking on common elements without shoes and telling him he cannot do so in the hallways;

      ii. calling him derogatory names such as that "happy boy" or "sir";

      iii. questioning him:

         1. asking what is his name is;
         2. asking him many times where he goes to school;
         3. asking him many times if he goes to school every day;
         4. asking him where he lives;
         5. asking him how he gets to school;

      6. asking him where is he going;

      7. asking him if he has a key;

      8. asking him why he is walking without shoes on;

      9. asking Stephen's neighbors, "Do you know who this guy is?";

      10. asking him what is he doing by the mailboxes;

      11. asking him questions when he throws away garbage;

      12. asking him questions when he uses the laundry room;

iv. telling him in front of family and other residents "don't worry they won't be here much longer" causing him to then ask his family "Do I have to leave my home?"

v. watching and monitoring him while he sits on the porch or is on the balcony;

vi. laughing and smirking at him in the hallway making him feel embarrassed and humiliated;

vii. shaking their head back and forth to demean him and make him feel like he is bad in many encounters;

viii. shaking fingers at him making him feel like he is bad;

ix. falsely blaming and accusing him for bothering contractors and saying he must stay away from them;

x. falsely blaming and accusing him of taking paper out of the elevator, accosting him to open his hands to see if he had the paper;

xi. approaching him at the entrance of the Condominium building when he calls his mother, screaming and hollering at him that he does not have his key and that she will call the police on him when he is transported back from school through special needs transportation services;

xii. refusing to "leave me alone" after being demanded to by Stephen; and

xiii. treating him differently than any other resident solely based on his

disability.

33. While the Defendants act this way to Stephen and his brothers in relation to Stephen's occupancy and use of an assistance animal in the Condominium, the Defendants do not act in the same way to other residents in the Condominium.

34. For these reasons, the Defendants violated and continue to violate 42 U.S.C. §3604(f)(2) and the implementing regulations of the Fair Housing Act when they:

a. imposed different terms, conditions or privileges against Stephen and his brothers relating to his occupancy and his use and enjoyment of the unit including common elements of the Condominium;[1] and when they

b. subjected Stephen to harassment because of his disability that had the effect of imposing different terms, conditions or privileges related to occupancy in the Association and that denied services or facilities in connection with his residence in the Condominium.[2]

35. As a direct and proximate result of Defendants' discriminatory actions, Stephen suffered damages including emotional distress, mental anguish, embarrassment, humiliation, anger, travel expenses incurred for medical treatment, frustration, loss of use and enjoyment of the unit and Condominium and loss of dignity.

36. Defendants' discriminatory conduct was deliberately indifferent, intentional, willful or taken in reckless disregard of the rights of Stephen as a disabled person. Stephen is entitled to punitive damages to punish and deter Defendants' reckless disregard of Stephen's rights under the FHA. During the time Defendants' treated Stephen differently on the basis of his disability, Defendants had knowledge that disability laws require them to treat Stephen and his family differently on the basis of disability yet still continued to do this in violation of the FHA.

37. The Association is directly and vicariously liable for such actions and the

---

[1] 42 U.S.C. §3604(f)(2) and 24 C.F.R. §100.70(b)
[2] 42 U.S.C. §3604(f)(2) and 24 C.F.R. §100.65

actions of its President and Board Members who acted on behalf of the Association in the scope of their duties as directors or officers and with apparent authority of the Association.

38. Stephen is entitled to declaratory relief stating that Defendants discriminatory actions violated the FHA and for a statutory injunction to enjoin the Defendants from violating the FHA.

39. Plaintiff is entitled to an award of attorneys' fees, costs and disbursements pursuant to 42 U.S.C. § 3613 of the FHAA.

## COUNT III
## RETALIATION AND HOSTILE ENVIRONMENT HARASSMENT
## Violations of 42 U.S.C. §3617; 24 C.F.R. §§100.400, 100.600; 100.7
## (All Plaintiffs against all Defendants)

40. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-13 above as though fully set forth herein.

41. Stephen is a disabled individual based on autism.  Stephen's disability is and has been known, obvious and readily apparent to Defendants.  Defendants have regarded and continue to regard Stephen as disabled.

42. Defendants violated the retaliation and hostile environment harassment provisions of the FHA when they:

   a. Threatened, intimidated, and coerced Stephen a by imposing thousands of dollars of fines and confirming fines immediately in response to Stephen's accommodations request for an assistance animal;

   b. Falsely represented Stephen's occupancy had to be approved and that the Association could impose fines as a result;

   c. Falsely represented at a Board meeting that the fines imposed by the Association against the Unit can be confirmed by the Association without use of a fining committee;

    d. Harassed and bullied Stephen, interfering with his use and enjoyment of the unit and common elements of the Condominium by constantly:

       i. admonishing him for walking on common elements without shoes and telling him he cannot do so in the hallways;

      ii. calling him derogatory names such as that "happy boy" or "sir";

     iii. questioning him:

          1. asking what is his name is;
          2. asking him many times where he goes to school;
          3. asking him many times if he goes to school every day;
          4. asking him where he lives;
          5. asking him how he gets to school;
          6. asking him where is he going;
          7. asking him if he has a key;
          8. asking him why he is walking without shoes on;
          9. asking Stephen's neighbors, "Do you know who this guy is?";
          10. asking him what is he doing by the mailboxes;
          11. asking him questions when he throws away garbage;
          12. asking him questions when he uses the laundry room;

      iv. telling him in front of family and other residents "don't worry they won't be here much longer" causing him to then ask his family "Do I have to leave my home?"

       v. watching and monitoring him while he sits on the porch or is on the balcony;

      vi. laughing and smirking at him in the hallway making him feel embarrassed and humiliated;

     vii. shaking their head back and forth to demean him and make him feel like he is bad in many encounters;

    viii. shaking fingers at him making him feel like he is bad;

    ix. falsely blaming and accusing him for bothering contractors and saying he must stay away from them;

    x. falsely blaming and accusing him of taking paper out of the elevator, accosting him to open his hands to see if he had the paper;

    xi. approaching him at the entrance of the Condominium building when he calls his mother, screaming and hollering at him that he does not have his key and that she will call the police on him when he is transported back from school through special needs transportation services;

    xii. refusing to "leave me alone" after being demanded to by Stephen; and

    xiii. treating him differently than any other resident solely based on his disability.

43. As a direct and proximate result of Defendants' discriminatory actions, Stephen suffered damages including emotional distress, mental anguish, embarrassment, humiliation, anger travel expenses incurred for medical treatment, frustration, loss of use and enjoyment of the unit and Condominium and loss of dignity.

44. Defendants' discriminatory conduct was deliberately indifferent, intentional, willful or taken in reckless disregard of the rights of Stephen as a disabled person. Stephen is entitled to punitive damages to punish and deter Defendants' reckless disregard of Stephen's rights under the FHA.  During the time Defendants' harassed Stephen and his family on the basis of his disability, Defendants had knowledge that disability laws prohibit such retaliation and harassment yet still continued to do this in violation of the FHA and made no efforts to stop it.

45. Defendants conduct constitutes coercion, harassment, intimidation, threats or interference with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, the rights granted or protected by the FHA in violation of Section 42 U.S.C. § 3617

46. The Association is directly and vicariously liable for such actions and the actions of its President and Board Members who acted on behalf of the Association in the scope of their duties as directors or officers and with apparent authority of the Association.

47. Plaintiff is entitled to declaratory relief stating that Defendants discriminatory actions violated the FHA and for a statutory injunction enjoining violations of the FHA.

48. Plaintiff is entitled to an award of attorneys' fees, costs and disbursements pursuant to 42 U.S.C. §3613 of the FHAA.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Margaret Nader as next friend of Stephen Volpe, respectfully requests that this Court enter Judgment in her favor and against Defendants, Magdalene Ivanovski and Golden Horn Condominium Association, Inc., jointly and severally, as follows:

A. Declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating against persons with disabilities respectively as alleged above;

B. Preliminarily enjoin Defendants from commencing or enforcing any removal action of Stephen or his assistance animal or imposing or collecting any fines based on Stephen's occupancy or Stephen' assistance animal;

C. Preliminarily enjoin Defendants from harassing, bullying and retaliating against Stephen as stated above and to direct any communications concerning Stephen to the Unit to his mother, Margaret Nader or brother, Charles Volpe;

D. Permanently enjoin Defendants' violation of the FHA by requiring Defendants to waive the pet restrictions and approve Stephen's accommodations request to keep his assistance animal;

E. Permanently enjoin Defendants from harassing, bullying and retaliating

against Stephen and to direct any communications concerning Stephen to the Unit to his mother, Margaret Nader or brother, Charles Volpe;

F. Require as appropriate, affirmative relief that the Association adopt anti-discriminations policies, practices and procedures to handle accommodations requests for assistance animals and to not retaliate or harass individuals with disabilities at the Condominium;

G. Require the Association's president and directors to undergo disability discrimination training as appropriate, affirmative relief;

H. Award Plaintiff actual, special, nominal and punitive damages, court costs and Plaintiff's reasonable attorneys' fees and costs under 42 U.S.C. §3613;

I. Award such other and further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable in accordance with Rule 38 of the Federal Civil Rules of Procedure.

DATED:  October 23, 2019

Respectfully submitted,

Glazer & Sachs, P.A.
3113 Stirling Rd., Suite 201
Fort Lauderdale, Florida 33312
T: (954) 983-1112

By:  /s/Paul Kim

Paul Kim
Florida Bar No. 37111
paul@condo-laws.com

*Attorneys for Plaintiff*